IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA,
*ex rel*. JOHN DOE                                             PLAINTIFF

v.                              CIVIL ACTION NO. 5:15-cv-19-DCB-MTP

LINCARE HOLDINGS, INC.                                        DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendant Lincare Holdings, Inc.'s Motion to Dismiss (**docket entry 15**). Having carefully considered the motion, response, and applicable law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Facts and Procedural History

Relator John Doe ("Relator"), on behalf of the United States, filed this qui tam suit against defendant Lincare Holdings, Inc. ("Lincare") under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et. seq. Lincare is a national respiratory care provider with over 1,100 locations across the country. Compl., ¶ 4. Relator was employed as a salesperson for Lincare, Inc., a wholly-owned subsidiary of the defendant, from April to September of 2014 in its Natchez, Mississippi office. Id. at ¶ 2.

Over 80 percent of Lincare's customers are covered by Medicare or Medicaid. Id. at ¶ 4. Medicare includes a voluntary supplemental insurance benefit under "Part B," which covers the

1

rental of durable medical equipment and other medical supplies. Id. at 11. To qualify for Medicare funding, the durable medical equipment must be medically necessary. Id. at 14. For a patient to be medically qualified, the patient must suffer from a severe lung disease or hypoxia-related symptoms which might be expected to improve with oxygen therapy, and (among other factors) the patient must have an arterial oxygen saturation level at or below 88% for at least five minutes. Id. at 19. Virtuox machines are generally used to measure patients' arterial oxygen saturation level by performing an overnight pulse oximetry test. Id. Lincare provides Virtuox machines to potential customers, the customers use the machine to perform an overnight oximetry test, and Lincare records the test results and retrieves the Virtuox machine the following day. Id. If a patient is otherwise medically qualified and the Virtuox machine generates a qualifying arterial oxygen saturation level, the patient's physician then submits a certificate of medical necessity and an order for oxygen supplies. Id. Once these steps are completed, providers, like Lincare, may sell the patient Medicare-covered oxygen supplies. Id.

According to Relator, "Lincare implemented a scheme through which it falsifie[d] and manipulate[d] its Virtuox testing to ensure that the results of its tests indicate[d] an arterial oxygen saturation level at or below 88%." Id. at 21. Relator claims that Lincare used a "host of tricks" to generate false reports that

enabled the company to sell oxygen and other services to customers who were unqualified to receive them.  Id. at ¶¶ 22, 25.

Relator alleges that each morning Lincare's office manager, Kay DeWeese, and licensed practical nurse, Dee Mason, would hold a staff meeting in the Natchez office. Id. at ¶ 23.  During these meetings, Lincare's delivery employees were allegedly told to instruct any potential customers receiving Virtuox machines to utilize the machines in a manner that would generate a low arterial oxygen saturation level. Id. Specifically, employees were taught to direct patients:

> (i) to ensure any pain medications or antihistamines are taken before going to sleep; (ii) not to remove any fake nails before going to sleep; (iii) to raise the arm to which the sensor is attached while conducting the test; and (iv) to de-elevate his or her head before going to sleep.

Id. at ¶ 24.  Relator alleges that for customers who had already been provided a positive airway pressure machine for sleep apnea or other conditions, Lincare used a software system called Profox to test the patient's arterial oxygen saturation. Id. at ¶ 26. These Profox tests were administered without physician approval, and, as with the Virtuox machine, customers were instructed to take the test in such a manner as to lower the arterial oxygen saturation number. Id.  Lincare allegedly used these techniques to improperly "qualify" patients for Medicare-covered oxygen services. Id.  After reporting this conduct to Lincare's Compliance

office on two occasions, Relator claims he was terminated for
"insubordination" and "causing discord." Id. at ¶ 27.

This oximetry testing scheme allegedly extended beyond
Lincare's Natchez office. Relator claims that two employees
stationed in other locations reported that Lincare improperly
coached patients to "use the Virtuox machine right after walking
up stairs . . . walk around the room while the Virtuox machine
[is] connected, [] hold their breath while using the machine. . .
or [] have a family member with a known low oxygen saturation to
wear the machine instead." Id. at 29. And another employee
allegedly reported that Lincare would deliver oxygen and equipment
to patients before obtaining physician approval. Id. at 32.

On February 25, 2015, Relator filed his original Complaint
against the defendant under seal, alleging that Lincare violated
Sections 3729(a)(1)(A), (B), and (G) of the FCA by submitting
fraudulent bills to the government after deliberately manipulating
and falsifying pulse oximetry tests to generate the appearance of
low oxygen saturation levels. Id. at ¶ 37. Relator also asserted
a claim for retaliatory discharge under Section 3730(h). The
Complaint was unsealed on August 24, 2015 after the government
declined to intervene. Defendant Lincare moved to dismiss
Relator's complaint for lack of subject matter jurisdiction and
failure to state a claim under Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6).

## II. Discussion

### A. False Claims under 31 U.S.C. § 3729

Lincare urges the Court to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction because the FCA's first-to-file bar precludes Relator's claims. Additionally, Lincare submits that dismissal for failure to state a claim under Rule 12(b)(6) is warranted because Relator's claims are insufficiently pled and also precluded by the FCA's public disclosure bar. When a Rule 12(b)(1) motion is filed in conjunction with a motion under Rule 12(b)(6), the Court considers the jurisdictional challenge first. Roop v. Melton, 2013 WL 5349153, *3 (N.D. Miss. 2013). Thus, the Court shall address the jurisdictional challenge to Relator's FCA claims under the first-to-file bar before considering Lincare's arguments for dismissal under Rule 12(b)(6).

### 1. Subject Matter Jurisdiction

When considering a motion to dismiss under Rule 12(b)(1), the Court may look to: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." U.S. ex rel. Colquitt v. Abbot Laboratories, 864 F. Supp. 2d 499, 516 (N.D. Tex. 2012). The Court considers all well-pled allegations as true, viewing them in the light most favorable to the plaintiff. Id. The party asserting

jurisdiction bears the burden of proving that jurisdiction does in fact exist. Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).

The FCA's first-to-file bar prohibits plaintiffs from bringing "a related action based on the facts underlying [a] pending action." 31 U.S.C. § 3730(b)(5). This jurisdictional bar was enacted "to discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud." U.S. ex rel. Branch Consultants v. Allstate Ins. Co., 560 F.3d 371, 376 (5th Cir. 2009). In determining whether the Relator's claim is barred by the first-to-file provision, the court must compare the relator's complaint with the allegedly first-filed complaint. U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 516 (6th Cir. 2009). Though the allegations of fraud need not be identical across the lawsuits, Section 3730(b)(5)'s jurisdictional bar will apply "so long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action." Id. at 378. The first-to-file bar enjoys relatively broad application, and the essential focus is on "whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim." U.S. v. Planned Parenthood of Houston, 570 Fed. App'x 386, 389 (5th Cir. 2014). See also U.S. ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1189 (9th Cir. 2001) ("once the government knows the essential facts of a fraudulent scheme, it has enough information

to discover related frauds"). Thus, a relator cannot avoid the first-to-file bar by "simply adding factual details or geographic locations to the essential or material elements of a fraud claim brought against the same defendant" in a prior suit. Branch, 560 F.3d at 378.

In its motion, Lincare argues that Relator's fraud claims are precluded by the FCA's first-to-file bar because they are duplicative of allegations previously asserted in a case pending before the United States District Court for the District of Massachusetts. See U.S. ex rel. Robins et al. v. Lincare, Inc. et al., 1:10-cv-12256-DPW (D. Mass. 2014). Lincare contends that because Relator alleges the same general conduct and theory of fraud contained in the Robins complaint, Relator's claims must be dismissed. In response, Relator maintains that Robins is unrelated to the fraudulent scheme alleged in this case, therefore the first-to-file bar should not apply.[1]

Comparing the Robins complaint with the complaint sub judice, the Court finds that the allegations contained therein are sufficiently related so as to preclude Relator's claims under the first-to-file bar. Robins alleges that Lincare conducted a fraudulent scheme in violation of the FCA by improperly

---

[1] The parties do not dispute that Robins was filed prior to the instant case, nor do they dispute that Robins is currently "pending" for purposes of the first-to-file bar.

administering   pulse   oximetry   testing   without   approval   or
authorization:

- Lincare generally engaged in . . . billing for
  portable oxygen tanks when the customer did not
  require them . . . [and] testing potential customers
  and providing oxygen to Medicare beneficiaries
  without physician orders. <u>Robins</u> Compl., ¶ 4.

- Specifically, Lincare falsely and fraudulently billed
  the government for services and equipment that were
  non-reimbursable, were not medically necessary, . . .
  or were provided in direct violation of the applicable
  standards and regulations governing Lincare's
  provision of oxygen equipment and services. <u>Robins</u>
  Compl., ¶ 3.

- Lincare's service representatives provide customers
  with instruction and training regarding equipment use
  and maintenance, as well as compliance with the
  prescribed therapy. <u>Robins</u> Compl., ¶ 50.

- Lincare routinely initiated and conducted oximetry
  testing to discover new oxygen customers. <u>Robins</u>
  Compl., ¶ 203.

- Service representatives were given a pulse oximetry
  overnight testing device and instructed, as part of
  their daily routes, to provide it to the non-oxygen
  customers and instruct the customers how to use the
  device. The service representatives told the
  customers that a simple overnight test needed to be
  performed as part of their treatment. Lincare service
  representatives were trained to tell customers, when
  they asked who had ordered the testing, that their
  physicians had ordered it. In fact, Lincare had
  initiated the testing; the customer's physician was
  unaware that it was being conducted. <u>Robins</u> Compl., ¶
  205.

- If the results showed that a customer's oxygen level
  was low enough to justify oxygen therapy, the center's
  sales representative took the results to the
  customer's physician and tried to convince the
  physician to prescribe oxygen. <u>Robins</u> Compl., ¶ 206.

Similarly, Count I of Relator's complaint cites violations of 31 U.S.C. § 3729(a)(1), alleging:

> [Lincare] has submitted and/or caused to be submitted false or fraudulent claims to Medicare and Medicaid by having non-qualified providers perform, participate and/or instruct patients with regards to the pulse oximetry test, deliberately manipulating and falsifying pulse oximetry results to generate the appearance of low oxygen saturation levels so that it could provide Medicare-covered oxygen to patients that were not qualified to receive it.

Compl., ¶ 37.  As in Robins, Relator alleges that Lincare violated Medicare guidelines by delivering oximetry machines to prospective customers' homes, where unqualified delivery employees would then instruct patients to use the machine. Compl., ¶ 22.  Relator also claims that Lincare delivered oxygen and respiratory equipment to prospective customers without physician approval, and for those patients already receiving Lincare services, Lincare performed unauthorized assessments of the patients' arterial oxygen saturation. Id. at ¶¶ 26, 32.  After allegedly instructing customers to take the assessment in a manner that would lower the arterial oxygen saturation result, Lincare would attempt to "upsell" customers by encouraging them to purchase oxygen or by convincing the customers' physician to prescribe oxygen. Id.

Relator disputes that the Robins scheme bears any similarity to the fraudulent conduct forming the basis of his claims.  Relator argues that these fraudulent schemes are distinguishable because Robins fails to mention that Lincare instructed patients to

9

manipulate oximetry tests to produce a qualifying result. Although Relator offers additional facts about the manner in which Lincare instructed customers to take the unauthorized oximetry tests, these additional details are insufficient to save Relator's claims. See Branch, 560 F.3d at 266 (relator could not avoid the first-to-file bar by focusing on additional instances of fraud occurring in different geographic locations); Planned Parenthood, 570 Fed. App'x at 390 (allegations that medical services were performed but improperly coded were not sufficiently distinct from earlier allegations that the defendant submitted bills for medical services not performed); U.S. ex rel. Bane v. Life Care Diagnostics, 2008 WL 4853599 (M.D. Fla. Nov. 10, 2008) (barring later filed suit despite slight variations in fraudulent scheme); see also U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 517 (6th Cir. 2009) (the fact that allegations covered somewhat different time periods was irrelevant where the complaints alleged "the same type of fraudulent activity by the same general group of actors").

The fraudulent scheme depicted in Relator's complaint is largely based on the same underlying facts as the Robins scheme, namely that Lincare submitted fraudulent claims by issuing oximetry tests without physician approval or authorization, that Lincare administered these tests in an effort to qualify non-oxygen customers for Medicare covered oxygen, that unqualified

10

delivery personnel provided customers with instructions on how to take these unauthorized oximetry tests, and that Lincare used these test results to influence physicians to prescribe oxygen to customers who were otherwise unqualified to receive it.  Further, the additional facts advanced by Relator, i.e. that Lincare manipulated the administration of oximetry tests, could not have occurred but for the fact that Lincare administered the tests without authorization.  Based on the substantial overlap in material facts underlying these alleged schemes, the Court finds that the complaints are sufficiently "related" for purposes of the first-to-file bar.  Both complaints essentially allege that Lincare violated the FCA by generating false reports and performing unauthorized assessments in an effort to improperly qualify patients for Medicare-covered oxygen. The Robins complaint contains broad allegations of multiple schemes and extensive, wide-reaching fraud orchestrated by defendant Lincare. Robins Compl., ¶¶ 25, 65, 89.  With allegations of Lincare's nationwide fraudulent scheme, Robins provided sufficient information to put the government on notice of the related fraud described here, as it is likely that an investigation into the Robins allegations would reveal the fraudulent conduct alleged in Relator's complaint.  Accordingly, the Court finds that Relator's FCA claims under § 3729 are precluded by the first-to-file bar and shall therefore be dismissed without prejudice. See U.S. ex rel. Chovanec

v. Apria Healthcare Group Inc., 606 F.3d 361 (7th Cir. 2010)
(dismissal based on § 3730(b)(5) should be without prejudice
because the first-to-file bar only applies while the initial
complaint is "pending").

### 2. Failure to State a Claim

Even assuming that the Relator's FCA claims are not
jurisdictionally barred, Count I of the Complaint should be
dismissed based on the insufficiency of Relator's allegations in
light of the pleading standards governing Rule 8, Rule 9, and Rule
12(b)(6). Lincare moves for dismissal under Rule 12(b)(6), arguing
that Relator's claims are insufficient to state a claim under the
FCA.

Under Rule 12(b)(6), a court may dismiss a suit for "failure
to state a claim upon which relief can be granted." Fed. R. Civ.
P. 12(b)(6). Pleadings must contain a "short and plain statement
of the claim" showing the plaintiff is entitled to relief. Fed. R.
Civ. P. 8(a)(2). To survive a motion for dismissal under Rule
12(b)(6), the plaintiff must plead "enough facts to state a claim
to relief that is plausible on its face." U.S. ex rel. Rafizadeh
v. Continental Common, Inc., 553 F.3d 869, 872 (5th Cir. 2008).
"A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009). In considering the motion,

the "[C]ourt accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004).

In addition to satisfying the plausibility requirement articulated in Iqbal, claims brought under the FCA must also comply with the supplemental pleading standards of Rule 9(b). U.S. ex rel. Steury v. Cardinal Health, Inc., 735 F.3d 202, 204 (5th Cir. 2013); U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009) ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading."). Rule 9 works to "weed out meritless fraud claims sooner rather than later," and the Fifth Circuit applies the rule to FCA claims "with 'bite' and 'without apology.'" Grubbs, 565 F.3d at 185. Rule 9 requires that "in alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). At a minimum, the plaintiff must set forth the "who, what, when, where, and how of the alleged fraud." Steury, 735 F.3d at 204.

Applying this standard, the Court finds that Relator has failed to sufficiently allege fraud with the particularity required by Rule 9(b). In Count I of the complaint, Relator alleges claims under Section 3729(a)(1), which imposes liability on any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

. . . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . .

31 U.S.C. § 3729(a)(1). To state a claim under the FCA, plaintiffs must allege: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or forfeit moneys due (i.e. that involved a claim)." U.S. ex rel. Longhi v. United States, 575 F.3d 458, 467 (5th Cir. 2009); Steury, 735 F.3d at 267.

Relator's FCA claims are fatally flawed because the complaint fails to sufficiently allege the presentment of a claim. The linchpin of an FCA claim is the "false claim." U.S. ex rel. Rafizadeh v. Continental Common, Inc., 553 F.3d 869 (5th Cir. 2008); U.S. ex rel. Parikh v. Brown, 587 Fed. App'x 123, 128 (5th Cir. 2014) ("[FCA] attaches liability . . . to the claim for payment, not to the underlying fraudulent activity."); U.S. ex rel. Phillips v. Pediatric Services of America, Inc., 142 F. Supp. 2d 717, 730 (W.D.N.C. 2001) ("a central question in False Claims

Act cases is whether the defendant ever presented a false or
fraudulent claim to the government").  To survive dismissal, the
Fifth Circuit has held that relators must, at a minimum, plead the
"particular details of a scheme to submit false claims paired with
reliable indicia that lead to a strong inference that claims were
actually submitted." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d
180, 190 (5th Cir. 2009) (reversing dismissal of relator's
complaint, which contained "dates and descriptions of recorded,
but un-provided services, and a description of the billing systems
that records were likely entered into").

Here, Relator's complaint falls short of the standard set
forth in Grubbs.  The complaint contains no reference to financial
statements evidencing any claim, nor does Relator allege any
identifying information about the amount of specific claims or the
dates on which they were submitted.  Relator's complaint also lacks
the requisite indicia of the specific scheme to submit false
claims.  Relator was employed by the defendant as a sales
representative.  He provides no information about the company's
billing system or other facts to suggest that he has knowledge of
how bills were submitted by Lincare for payment.  Relator alleges
that Ms. Mason and Ms. DeWeese instructed delivery personnel to
improperly coach patients, but the complaint fails to identify any
delivery personnel who complied with these instructions or any
billing personnel who submitted false claims as a result.

15

Furthermore, Relator fails to identify which, if any, of the oximetry tests administered during Relator's employment produced false results, who recorded those false results, or how Lincare fraudulently certified its compliance with Medicare regulations in order to effect payment.

Relator assumes that Lincare submitted false claims at some point in time simply because delivery personnel were instructed to administer oximetry tests incorrectly.  But the relator is not permitted "merely to describe a private scheme in detail but then allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the government." U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1311 (11th Cir. 2002); see U.S. v. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) ("even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief"); U.S. ex rel. Church v. Miss. Baptist Healthy Sys., Inc., 2005 WL 2375161, *4 (S.D. Miss. Sept. 26, 2005) ("latitude should only be granted to a Relator when the pleadings set forth a factual basis to substantiate their belief that fraud has occurred"); see also U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp., 519 Fed. App'x 890, 895 (5th Cir. 2013) (unpublished) ("the contents of a false claim need not always be presented," but this does not

16

relieve relators of the burden of satisfying the particularity requirements of Rule 9). At best, Relator's complaint alleges a general "scheme" by which false claims *could* have eventually been submitted by Lincare. But despite the complaint's general and vague allegations referencing the *possibility* that Lincare submitted false claims, there is no specificity regarding who, what, when, where, and how such alleged claims were submitted. Because the complaint fails to provide some indicia of reliability creating a strong inference that false claims were actually submitted through the alleged scheme, Relator's FCA claims are subject to dismissal.

Additionally, Relator's claim under the FCA's reverse false claims provision is deficient because the complaint fails to mention any financial obligation Lincare may have owed to the Government. Liability under Section 3729(a)(1)(G) arises when a defendant knowingly makes a false record or statement to avoid an obligation to pay money to the Government. <u>See</u> 31 U.S.C. § 3729(a)(1)(G). Claims under this provision require: "(1) that the defendant had an obligation to pay money to the government, (2) that the defendant used a false statement to avoid or decrease that obligation, (3) that the false statement was material, and (4) that the defendant made the false statement knowingly." <u>U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.</u>, 668 F. Supp. 2d 780, 811 (E.D. La. 2009). "Where a complaint 'makes no

17

mention of any financial obligation that the [defendants] owed to the government,' and 'does not specifically reference any false records or statements used to decrease . . . an obligation,' the court should dismiss the subsection (a)(1)(G) claim." U.S. v. ex rel. Kester v. Novartis Pharm. Corp., 43 F. Supp. 3d 332, 368 (S.D.N.Y. 2014) (citing Wood ex rel. U.S. v. Applied Research Assocs., Inc. 328 Fed. App'x 744, 748 (2d Cir. 2009); see Branch, 668 F. Supp. 2d at 811 (dismissing reverse false claims where relator failed to identify any obligation owed by defendants).

Apart from citing the statutory language of subsection (a)(1)(G), Relator has not identified any monetary obligation owed by defendant Lincare. In his response to the motion, Relator attempts to argue that Lincare violated the reverse false claims provision by receiving a windfall which should have been refunded to the government for government funded services. But this argument amounts to mere speculation as it is unsupported by the factual allegations in the complaint. Accordingly, Relator has failed to adequately plead a violation of Section 3279(a)(1)(G).

The Court finds that Relator's FCA claims under Count I are precluded by the first-to-file bar. Moreover, Relator has failed to adequately plead his FCA claims in accordance with Rules 8, 9, and 12(b)(6). Because dismissal is warranted on these grounds, the Court finds it unnecessary to determine whether the public disclosure bar also precludes Relator's claims.

*B. Retaliation*

In Count II of the complaint, Relator alleges retaliatory discharge under 31 U.S.C. 3730(h). Section 3730(h) prohibits an employer from "discharging . . . or in any other manner discriminating against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the FCA." Compl., ¶ 42. Unlike Relator's other FCA claims, retaliation claims under 31 U.S.C. § 3730(h) need only satisfy the basic pleading requirements of Rule 8. Guerrero v. Total Renal Care, Inc., 2012 WL 899228, at *3 (W.D. Tex. March 12, 2012). To bring an FCA retaliation claim, the plaintiff must plead: (1) that he engaged in a protected activity; (2) that his employer knew he was engaged in a protected activity; and (3) that he was discharged because of it. Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994).

To engage in a protected activity under the FCA, an employee's actions must be aimed at matters that "reasonably could lead to a viable claim under the [FCA]." U.S. ex rel. Wuestenhoefer v. Jefferson, 105 F. Supp. 3d 641, 676 (N.D. Miss. 2015) ("an employee need not have filed an FCA lawsuit or have developed a winning claim at the time of the alleged retaliation"); but see Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 68 (D.C. Cir. 2008) (employee's investigation into employer's noncompliance with federal regulations was not a protected activity). Internal complaints

are considered protected activity under the FCA if they "concern false or fraudulent claims for payment submitted to the government." U.S. ex rel. George v. Boston Scientific Corp., 864 F. Supp. 2d 597, 604 (S.D. Tex. 2012) (no "magic words" are required, but employee must state that he is concerned about possible fraud in order to impute knowledge on the employer).  As to the causal-link element of the prima facie case, "the showing . . . is not onerous; the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. at 609.

Here, Relator alleges that he reported the "illegal conduct" to his superiors on two occasions and that he was "discharged by the Defendant as a direct result of his acts" immediately after the second occasion. Compl., ¶ 27, 34, 35.  Based on the facts alleged, the Court finds that Relator's allegations are sufficient to state a plausible claim for retaliation and declines to dismiss Count II on this basis.

## C. Relator's Identity

Although Relator's retaliation claim survives the motion to dismiss, Relator must disclose his identity in order to proceed with his remaining claim.  As Lincare aptly noted in its memorandum in support of the motion to dismiss, Relator's identity remains undisclosed despite the fact that this case has been unsealed.  To this point, the Government filed a Statement of Interest in the

case, arguing that Relator should no longer be permitted to proceed as a John Doe plaintiff.   Finding no circumstances justifying anonymity, the Court agrees.

Rule 10(a) requires that the names of all parties be included in the complaint. Fed. R. Civ. P. 10(a). Consistent with the general proposition that judicial proceedings should be conducted in the open, courts have disfavored plaintiffs' attempts to proceed anonymously as "John Does." See Southern Methodist Univ. Ass'n of Woman Law Students v. Wynne & Jaffe, 599 F.2d 707, 712-13 (5th Cir. 1979) (finding that plaintiffs have no right to proceed anonymously absent special circumstances).   Generally, a plaintiff may not proceed anonymously unless he can demonstrate a substantial privacy right that outweighs the customary presumption of openness in judicial proceedings. See Doe v. Hallock, 119 F.R.D. 640, 643 (S.D. Miss. Dec. 8, 1987); Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992) (anonymity is only appropriate in exceptional cases of "highly sensitive and personal nature ... the risk that a plaintiff may suffer some embarrassment is not enough").   The same principles that disfavor John Doe plaintiffs in other cases apply equally to qui tam matters. See U.S. ex rel. McLain v. Flour Enterprises, 2013 WL 4721367, at *1 (E.D. La. Sept. 3, 2013) (ordering John Doe relators to identify themselves in an amended complaint or face dismissal).

Relator has cited no facts, circumstances, or legal authority which would allow him to proceed as a John Doe in this case. Therefore, the Court finds that Relator must disclose his identity or face dismissal as to his retaliation claim.

### III. Conclusion

For the reasons set forth herein, Lincare's motion to dismiss is granted as to Relator's FCA claims under Count I, but the motion is denied as to Relator's claim for retaliation under Count II. Within ten (10) days of the entry of this Order, Relator shall amend his complaint to identify himself in accordance with Rule 10. Relator is hereby notified that failure to disclose his identity through an amendment shall result in the dismissal of his remaining claim.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that Lincare's Motion to Dismiss (docket entry 15) is GRANTED IN PART and DENIED IN PART.

FURTHER ORDERED that Count I of Relator's Complaint is DISMISSED WITHOUT PREJUDICE;

FURTHER ORDERED that Relator shall identify himself through an amended complaint within ten (10) days of the entry of this Order.

SO ORDERED this the 27th day of February, 2017.


                                   /s/ David Bramlette
                                   UNITED STATES DISTRICT JUDGE